IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ZACHARIAH J. HOLM, | § | |
| | § | |
| *Plaintiff*, | § | 5-19-CV-00042-RBF |
| | § | |
| vs. | § | |
| | § | |
| SERGEANT FNU SAUSENHAGEN, | § | |
| COMAL COUNTY SHERIFF'S OFFICE; | § | |
| OFFICER FNU MARTINEZ, COMAL | § | |
| COUNTY SHERIFF'S OFFICE; AND | § | |
| OFFICER FNU RUIZ, COMAL COUNTY | § | |
| SHERIFF'S OFFICE; | § | |
| | | |
| *Defendants*. | | |

**ORDER**

Before the Court is the Amended Motion for Summary Judgment filed by Defendants Sergeant Derrick Sassenhagen,[1] Officer Salvador Martinez, and Officer Daniel Ruiz of the Comal County Sheriff's Office. *See* Dkt. No. 36. At issue are Defendants' entitlement to qualified immunity with respect to excessive-force claims brought pursuant to 42 U.S.C. § 1983. Authority to enter this Order is based on the parties' consent to trial by U.S. Magistrate Judge. Dkt. Nos. 6, 18, 19, 20; *see* 28 U.S.C. § 636(c).

For the reasons discussed below, Defendants' Motion, Dkt. No. 36, is **GRANTED**. Defendants have demonstrated their entitlement to qualified immunity.

---

[1] Plaintiff misspells Sassenhagen in his Complaint.

## Factual and Procedural Background

This § 1983 excessive-force action stems from an encounter involving primarily Plaintiff Zachariah J. Holm and Defendant Officer Martinez. The encounter occurred on the afternoon of January 6, 2019, while Officers Martinez and Ruiz were escorting Holm to his cell.

The parties present competing narratives about what happened before and during the encounter. But only Defendants have introduced competent summary judgment evidence to support their version, including sworn affidavits from Martinez and Ruiz. Holm offers no affidavit or other evidence; he instead refers exclusively to videos of the encounter, which he contends support his version of events.[2]

According to Martinez's and Ruiz's affidavits, the encounter started once they reported to the H-block after overhearing a large bang. *See* Martinez Aff. ¶ 4-5 (Dkt. No. 36-4); Ruiz Aff. ¶ 4 (Dkt. No. 36-5). Upon arriving, Martinez and Ruiz found Holm secured in the dayroom area. *Id.* They asked Holm if he had banged on the wall. Holm initially denied it but then replied, in what Martinez and Ruiz report was an aggressive manner, "yes, you dumb f*ck." *Id.* When advised that his attitude to officers was unacceptable, Holm responded, "I don't give a f*ck." *Id.* Holm then stated that he wanted to return to his cell. *See id.*[3] Concerned by Holm's agitated demeanor, and aware of a prior incident in which days earlier Holm had "physically charged the responding officers," Martinez requested that Officer Ruiz assist in escorting Holm back to his

---

[2] Plaintiff filed revised responses without seeking leave after the deadline to respond had expired, and while the Court was drafting this Order. *See* Dkt. Nos. 43-44. Although the Court need not consider these late filings, they have been reviewed by the Court. They also don't include any competent summary judgment evidence. Moreover, nothing in these revised responses changes the Court's analysis.

[3] Holm objects to the officers' use of these statements on hearsay grounds. But Defendants don't offer the statements to establish the truth of the matter asserted (*i.e.*, that Holm banged on the wall and wanted to go back to his cell, or that Martinez and Ruiz are dumb). They're offered, and considered by the Court, as evidence of Holm's state of mind at the time. Moreover, Holm's statements also qualify as admissions by a party opponent. *See* Fed. R. Evid. 801(d)(2).

cell. Martinez Aff. ¶ 3-5 (Dkt. No. 36-4). Once Officer Ruiz arrived, Martinez ordered the gate to the dayroom opened.

The record also includes Officers Martinez's and Ruiz's body-camera videos of the events after the dayroom's gate opened. *See* Ex. A-5. All parties agree that the videos provide some of the best evidence of the incident in question.[4] The Court has viewed the videos.

The videos show Martinez ordering Holm to place his hands behind his back as Officers Ruiz and Martinez prepare to escort Holm to his cell. Holm complies, and his hands can be seen on the videos behind his back grasping an article of clothing. He is not, however, handcuffed or otherwise restrained. Martinez and Holm then begin walking, with Martinez only a few paces behind Holm and Ruiz following Martinez. Less than 10 seconds later, Holm turns around and states, in an agitated manner, "hey don't step on my feet man." Martinez then replies, "keep walking." Martinez then places his palm on Holm's back (presumably to ensure his compliance). Holm's hands are visible behind his back, still clutching the article of clothing. But he is still partially facing back to Martinez. An instant later, Holm—still partially turned back to Martinez—angrily exclaims, "hey, get your mother f*cking hands off me," as he and Martinez come into very close contact. The two then begin to scuffle. Martinez can be seen grabbing Holm around the neck from behind and placing him in a chokehold. But the videos very quickly become unclear and provide no additional useful information, as Martinez takes Holm to the ground and the two men scuffle.

---

[4] On October 16, 2020, Holm submitted an advisory explaining that he hasn't been able to view the videos submitted in support of Defendants' Amended Motion for Summary Judgment. *See* Dkt. No. 39. But Defendants previously submitted these same videos in conjunction with their original Motion for Summary Judgment. They just resubmitted them in a more useable format at the Court's instruction. *See* Dkt. No. 35. Moreover, Holm's later filings reveal that he was eventually able to access the videos. *See* Dkt. Nos. 40-41.

The videos reflect that Sergeant Sassenhagen then runs down the hallway to assist Officers Martinez and Ruiz as they scuffle with the unrestrained Holm. According to Holm's *accusations*, Sergeant Sassenhagen placed his knees on Holm's back and neck and struck Holm with a closed fist to his head and face, all the while exclaiming "you don't run shit here" and "this is my house." *See* Compl. (Dkt. No. 1). The videos (with audio) reflect a scuffle, and Sassenhagen can be heard telling Holm not to even "do that again" and "you don't run anything around here." Holm claims that, at this point, he repeatedly exclaimed, "I can't breathe," leading Sergeant Sassenhagen to retort, "If you can talk, you can breathe." The video reflects that Holm and Sassenhagen uttered something akin to these statements, and Holm can be heard coughing. As mentioned, it's impossible to make out anything beyond that on the video or audio. The entire scuffle—from Holm's "get your . . . hands off me" statement to the point when officers have him handcuffed, stand him up, and begin walking him to a cell—lasts approximately 55 seconds.

Officers Martinez and Ruiz attest—and Holm does not contradict or question with any evidence—that it was due to Holm's "aggressive behavior" and recent history of violence that Martinez needed to secure Holm's upper body by placing him on the floor in a prone position. Martinez Aff. ¶¶ 3, 6-7; Ruiz Aff. ¶¶ 3, 5-6. Once on the floor, Martinez ordered Holm to place his hands behind his back. Martinez's and Ruiz's sworn statements indicate that Holm failed to comply with these commands. *See id.* Accordingly, Martinez struck Holm's right shoulder with a closed fist to gain compliance. Martinez Aff. ¶ 7. Other officers arrived and assisted in securing Holm. *See id.* Sergeant Sassenhagen explains that he assisted in applying handcuffs by placing Holm's right arm behind Holm's back and by also placing his knee on the upper part of Holm's back so Holm could not push up. *See* Sassenhagen Aff. ¶ 5 (Dkt. No. 36-3). Holm was then escorted out of the H-Block to a violent cell. *See id.; see also* Ex. A-5.

4

Medical records reveal that Holm was treated for head and jaw pain on the day of the incident, as well as the day after. *See* Ex. E. Holm presented with a contusion to his left lateral lower orbital, right occipital, and left jaw areas, tenderness to his left mandible, and swelling to his right occipital region. *See id.* Holm complained that he couldn't fully open his mouth and believed his jaw was out of alignment. He characterized the pain as dull but constant, although a facial x-ray revealed no acute fracture or dislocation. *See id.* Holm was prescribed 325 milligrams of acetaminophen. The medical records reflect that Holm later complained of severe headaches, allegedly because of the incident, and that he also refused to report to the infirmary in connection with those complaints. *See id.*

Holm subsequently filed a grievance related to the incident. His grievance, however, was denied on the grounds that Holm's actions "required corrective measures from facility staff to maintain the safety and security of the facility." *See* Ex. A-6 to Mot.

On January 14, 2019, Holm initiated this action via § 1983 against Defendants Sassenhagen, Martinez, and Ruiz. *See* Dkt. No. 1. Defendants now move for summary judgment, each asserting entitlement to qualified immunity. *See* Dkt. No. 36.

## Analysis

The only issue on summary judgment is whether Defendants enjoy qualified immunity with respect to Holm's excessive-force claim under the Fourteenth Amendment. Although Holm claims that Defendants' actions violated his Eight Amendment rights, Defendants assert (and Holm doesn't dispute) that the altercation occurred before Holm's conviction. *See* Dkt. No. 36 at 5, 36-1 at 2. Comal County public records,[5] of which the Court takes judicial notice, *see* Fed. R. Evid. 201(b), confirm this fact. Accordingly, the Fourteenth Amendment governs Holm's claim. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015).

---

[5] *See* http://public.co.comal.tx.us/Search.aspx?ID=100 (last visited Nov. 5, 2020).

To overcome Defendants' assertions of qualified immunity, Holm must point to evidence sufficient to raise a genuine issue of material fact suggesting that Defendants' conduct violated a constitutional right and that their actions were objectively unreasonable in light of clearly established law as of the time of the conduct in question. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Where, as is the case here, there is video evidence available in the record, the Court not only "view[s] the facts in the light depicted by the videotape" but assigns "greater weight . . . to the facts evident from video recordings taken at the scene." *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). Here, the video reveals that Holm was physically and forcefully restrained by Officer Martinez. But it does not on its own raise a genuine issue of material fact with respect to the objective reasonableness of the force applied to Holm. The video also doesn't indicate any actionable conduct by Officer Ruiz or Sergeant Sassenhagen, and Holm has not pointed to any evidence implicating them in any use of excessive force. Their sworn statements, in contrast, provide unchallenged evidence showing the reason for their actions and the objective reasonableness of them. Accordingly, Officer Ruiz and Sergeant Sassenhagen are entitled to qualified immunity.

Officer Martinez's situation presents a closer call. But, ultimately, he too is entitled to qualified immunity on this evidentiary record.

A.     *Violation of a Constitutional Right.* To prove excessive force in violation of the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 U.S. 389, 396-97. Objective reasonableness can't be applied mechanically. *See id.* Instead, the analysis "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining the objective reasonableness of an officer's use of force, a court may consider the following non-exclusive factors: (1) the relationship between the need for the

use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.[6]

       1.     <u>Martinez</u>. The *Kinglsey* factors apply as follows, in no particular order, with respect to the objective reasonableness of Officer Martinez's actions. As mentioned, the video shows Martinez physically engaging Holm after Holm turned with aggression to berate Martinez for stepping on his feet. The video shows Holm's hands clasped behind his back but unrestrained. It also shows that Holm stopped walking in contravention of Martinez's direct order, and that Holm angrily and aggressively berated Martinez. Events unfolded quickly—a mere two or three seconds elapsed between Holm's first pause to turn and berate Martinez and the ensuing scuffle.

After bringing Holm to the ground, Officers Martinez and Ruiz attest that Holm disregarded Officer Martinez's order to place his hands behind his back, justifying Officer Martinez's need to strike Holm with a closed fist to gain his compliance.

The record also reflects a violent incident involved Holm physically charging officers just a few days prior. Specifically, Defendants attest that Holm was involved in an incident only six days prior in which he intentionally flooded his cell block, refused to be extracted from his cell, and then charged several officers. *See* Ex. A-3. Holm's recent aggressive conduct certainly informed Officer Martinez's perception, as it would for any reasonable officer in Martinez's

---

[6] Defendants incorrectly contend that the same Eighth Amendment standard, which applies to convicted prisoners alleging excessive force, also applies to pretrial detainees such as Holm. *See* Mot. at 5 (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 454-57 (5th Cir. 1994) & *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993)). But the Supreme Court in *Kingsley* abrogated the lower courts' application of the Eighth Amendment excessive force standards to claims brought by pretrial detainees. 576 U.S. at 400-01 (distinguishing excessive force claims brought by convicted prisoners to those filed by pretrial detainees).

situation. Holm was also not handcuffed at the time he turned to aggressively berate Officer Martinez in contradiction of instructions to keep walking.

Finally, medical records reveal that Holm suffered bruising to his face, head, and jaw as a result of the incident. *See* Ex. E. These injuries don't appear to be too severe, but they are not de minimus. Although, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury," Holm's injuries here are consistent with reasonable actions taken to secure officer safety under the circumstances. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (discussing the extent of the injury in the context of evaluating inmate's Eighth Amendment claim of excessive force).

There is no evidence in the record, including the video evidence, sufficient to raise a genuine fact question concerning the objective reasonableness of Officer Martinez's actions. Given the facts and circumstances reflected here, based on the evidence (not merely unsubstantiated contentions), Officer Martinez is entitled to qualified immunity.

> 2.   <u>Officer Ruiz and Sergeant Sassenhagen</u>. The record is also devoid of any

evidence sufficient to raise a genuine issue of material fact suggesting that Officer Ruiz and Sergeant Sassenhagen violated Holm's right to due process under the Fourteenth Amendment.

First, although Holm complains that Ruiz assisted Martinez in "slamm[ing]" him to the ground, there is no evidence of this on the video or anywhere else. And as stated above, Holm doesn't submit any competent summary judgment evidence to support this contention. On the other hand, according to Officer Ruiz's sworn affidavit, Officer Ruiz didn't assist Officer Martinez in taking Holm to the ground. Ruiz Aff. ¶¶ 5-6. Only once Holm lay on the ground did Officer Ruiz secure Holm's right arm behind his back and place his left hand on Holm's back to secure him on the floor. *See id.* Merely assisting another officer in handcuffing an inmate doesn't

constitute excessive force, regardless of whether Martinez's attack on Holm preceded Ruiz's actions. *See, e.g.*, *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (placing handcuffs on an offender too tightly doesn't amount to excessive force).

Holm similarly hasn't met his burden in pointing to evidence sufficient to raise a genuine issue of material fact suggesting that Sassenhagen violated Holm's constitutional rights. To start, although Holm alleges in his Complaint that Sassenhagen violently struck him with a closed fist to his head and face after Officer Martinez's take down, Holm hasn't submitted any evidence to support this contention. It isn't captured on video, and Officer Martinez—not Sassenhagen—admits to striking Holm (albeit on the shoulder). *See* Martinez Aff. ¶ 7. Moreover, even Holm concedes in his Response that his "ability to discern who was striking him may have also been skewed" given his physical position at the time. Dkt. No. 41 at 11.

Sassenhagen does admit to assisting Ruiz and Martinez in handcuffing Holm by placing Holm's right arm behind his back and placing his knee on the upper part of Holm's back so Holm couldn't push up. Sassenhagen Aff. ¶ 5. Holm can be heard on the video coughing and exclaiming several times "I can't breathe." But there's no evidence that Holm suffered any injuries as a result of Sassenhagen's actions (factor two). Holm didn't pass out, and the video shows him walking and fully conscious a less than a minute later. Nor did Holm complain of shortness of breath or present with any bruising to his back when seen by medical personnel. Moreover, placing a knee on an unrestrained inmate's back to ensure the inmate doesn't get up is a legitimate use of force, notwithstanding Holm's contentions that he wasn't resisting (factors one, three, and six). Moreover, in pinning Holm with his knee, Sassenhagen was merely assisting two officers subdue an inmate he perceived to be a threat (factors four and five). Because Holm hasn't introduced any evidence suggesting that Sassenhagen applied more force than necessary to secure him, Holm hasn't negated Sassenhagen's defense of qualified immunity. *C.f. Kitchen*

*v. Dallas County*, 759 F.3d 468, 478 (5th Cir. 2014), *abrogated in part by Kingsley*, 576 U.S. 389 ("[C]ourts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force."); *Anderson v. McCaleb*, 480 Fed. App'x 768, 773 (5th Cir. 2012) (explaining, in the Fourth Amendment context that "Officer Brant Smith should have known that he could not beat Anderson after he stopped resisting arrest or slam Anderson to the ground after he was handcuffed.").

      *B.*      *Clearly Established.*

Having determined that Officers Martinez and Ruiz and Sergeant Sassenhagen didn't violate Holm's constitutional rights, the Court need not examine whether any right at issue was clearly established at the time.

## Conclusion

For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED**. Defendants Martinez, Sassenhagen, and Ruiz are entitled to qualified immunity.

      **IT IS SO ORDERED**.

SIGNED this 5th day of January, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE